O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYED MUSAVI, an individual;<br>SHAKEB H. ZUBERI, an<br>individual, | Case No. EDCV 13-00970 DDP (SPx) |
| | **DEFENDANT'S MOTION TO DISMISS OR,**<br>**IN THE ALTERNATIVE, TO TRANSFER** |
| Plaintiff, | **VENUE** |
| v. | [Dkt. 13] |
| BURGER KING CORPORATION, a<br>corporation, | |
| Defendants. | |

     Presently before the Court is Defendant Burger King

Corporation's motion to dismiss or, in the alternative, to transfer

venue (the "Motion"). For the reasons stated in this Order, the

Motion is GRANTED and the action is dismissed for improper venue

under Rule 12(b)(3).

**I. Background**

     Plaintiffs Syed Musavi and Shakeb H. Zuberi ("Plaintiffs")

owned the rights to operate four franchise locations of Burger King

restaurants, all located within the Central District of California.

(Complaint ¶ 9.) Plaintiffs purchased the rights from third parties

in 2007 and have been operating the franchises since that time.

1  (Id.) Plaintiffs allege that they have operated the franchises in

2  substantial compliance with their obligations under the Franchise

3  Agreements with Defendant Burger King Corporation ("Defendant").

4  (Id. ¶ 10.)

5       In September 2012, Defendant sent Plaintiffs a letter,

6  alleging that Plaintiffs were in default of their obligations under

7  the Franchise Agreements. (Id. ¶ 15.) Plaintiffs dispute the

8  allegation that they breached any material terms of the contract.

9  (Id.) On January 15, 2013, Defendant unilaterally terminated the

10  Franchise Agreements due to "unpaid rent, royalty, advertising,

11  common area maintenance, and property tax charges." (Id.)

12  Plaintiffs allege that this termination was fraudulent and in bad

13  faith. (Id. ¶ 16.)

14       On January 16, 2013, Defendant filed a lawsuit against

15  Plaintiffs in the Southern District of Florida. (Id. ¶ 18.) That

16  action was dismissed upon Plaintiffs entering into a Limited

17  License Agreement ("LLA") with Defendant on the same day the case

18  was filed. (Id. ¶ 19.) The LLA provided that the Franchise

19  Agreements were terminated, but that Plaintiffs could continue

20  operating their franchises until May 29, 2013 for the purpose of

21  allowing Plaintiffs to attempt to sell the franchises as going

22  concerns.[1] (Motion at 2-3.) Plaintiffs also acknowledged by signing

23  the LLA that they "waive[] any ... defense, offset, claim, or

24  counterclaim" to Defendant's "default of the Franchise Agreements."

25  (LLA, Exh. 4 to Motion.)

26

27       [1]The LLA stated that "the Parties hereto agree that the
   Franchise Agreements are hereby terminated as of January 16, 2013."
28  (LLA, Exh. 4 to Motion.)

2

1   Plaintiffs neither sold nor closed their franchises by the

2   deadline. (Motion at 4.) On the day of the deadline, Plaintiffs

3   filed this lawsuit, alleging that the LLA is unconscionable and

4   unenforceable, in part because it limits Plaintiffs' ability to

5   sell their franchises. (Complaint ¶¶ 19-21.) Plaintiffs also allege

6   that their franchises have been unprofitable since 2008, in part

7   due to specific actions and failures of Defendant. (Id. ¶ 11.)

8   Plaintiffs allege that Defendant's actions constituted breaches of

9   the Franchise Agreements and the LLA. (Id. ¶¶ 26-30.) On June 6,

10  2013, Defendant filed an action against Plaintiffs in the Southern

11  District of Florida, alleging that Plaintiffs breached the LLA. (Motion

12  at 4.)

13  Defendant argues that this action should be dismissed under Fed. R.

14  Civ. Proc. 12(b)(3) for improper venue. Defendant points to the forum

15  selection clause contained in the LLA, which states:

16  The parties acknowledge and agree that this Agreement is

17  deemed entered into in Miami, Florida, and is governed by

18  Florida law, and that the U.S. District Court for the Southern

19  District of Florida shall be the venue and exclusive proper

20  forum in which to adjudicate any case or controversy arising,

21  either directly or indirectly, under or in connection with

22  this Agreement. If such court lacks jurisdiction, then the

23  11th Judicial Circuit (or its successor) in and for Miami-Dade

24  County, Florida, shall be the exclusive venue and proper forum

25  for any such case or controversy.

26  (LLA, Exh. 4 to Motion.)

27  In the alternative, Defendant argues that the Court should transfer

28  venue to the Southern District of Florida pursuant to 28 U.S.C. § 1404.

3

1   Finally, Defendant argues that the action should also be dismissed under

2   Fed. R. Civ. Proc. 12(b)(6) for failure to state a claim.[2]

3   **II. Legal Standard**

4         A forum selection clause can properly be enforced through a motion

5   to dismiss for improper venue under Federal Rule of Civil Procedure

6   12(b)(3). Arqueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir.

7   1996). Forum selection clauses are presumptively valid and should be

8   honored "absent some compelling and countervailing reason." Bremen v.

9   Zapata Off-Shore Co., 407 U.S. 1, 12 (1972). The party challenging the

10  clause bears a "heavy burden of proof" and must "clearly show that

11  enforcement would be unreasonable and unjust, or that the clause was

12  invalid for such reasons as fraud or over-reaching." Id. at 15.

13  **III. Discussion**

14        **A. The Forum Selection Clause Is Mandatory**

15        There are two types of forum selection clauses: mandatory and

16  permissive.  Northern Cal. Dist. Council of Laborers v. Pittsburgh-Des

17  Moines Steel Co., 69 F.3d 1034, 1036-37 (9th Cir. 1995). "A mandatory

18  forum selection clause is presumed valid and is to be strictly enforced.

19  A permissive forum selection clause, on the other hand, simply means that

20  the parties consent to the jurisdiction of the designated forum." Hsu, et

21  al. v. OZ Optics Limited, 211 F.R.D. 615, 618 (N.D. Cal 2002) (internal

22  citation omitted).  "To be mandatory, a clause must contain language that

23  clearly designates a forum as the exclusive one." Laborers, 69 F.3d at

24  1036-37. Here, the language in the LLA is mandatory because it contains

25  language stating that "the U.S. District Court for the Southern District

26

27        [2]Because the Court grants Defendant's Motion on the grounds of

28  improper venue, the Court does not reach the merits of Defendant's
    alternate grounds for dismissal or transfer.

1   of Florida shall be the venue and *exclusive* proper forum" for actions

2   "arising, either directly or indirectly, under or in connection with this

3   Agreement." (LLA, Exh. 4 to Motion (emphasis added).) Plaintiffs do not

4   contest that the language of the forum selection clause is mandatory.

5          **B. The Public Policy Exception**

6          A mandatory forum selection clause is presumed valid, but can be

7   invalidated if: (1) "the inclusion of the clause in the agreement was the

8   product of fraud or overreaching;" (2) "the party wishing to repudiate

9   the clause would effectively be deprived of his day in court were the

10   clause enforced;" or (3) "enforcement would contravene a strong public

11   policy of the forum in which suit is brought." Bremen, 407 U.S. at 12.

12   Plaintiffs argue that the public policy exception to enforcement applies

13   in this case.

14          Plaintiffs argue that the forum selection clause contained in the

15   LLA is unenforceable because it violates California public policy as

16   embodied in the California Franchise Relations Acts ("CFRA"), which

17   provides that "[a] provision in a franchise agreement restricting venue

18   to a forum outside this state is void with respect to any claim arising

19   under or relating to a franchise agreement involving a franchised

20   business operating within this state." Cal. Bus. & Prof. Code § 20040.5.

21   The Ninth Circuit has found that § 20040.5 "expresses a strong public

22   policy of the State of California to protect California franchisees from

23   the expense, inconvenience, and possible prejudice of litigating in a

24   non-California venue. A provision, therefore, that requires a California

25   franchisee to resolve claims related to the franchise agreement in a non-

26   California court directly contravenes this strong public policy and is

27   unenforceable." Jones v. GNC Franchising, Inc., 211 F.3d 495, 499 (9th

28   Cir. 2000).

1        Defendant argues that the forum selection clause that it is seeking

2   to enforce is not contained in a "franchise agreement," but instead in

3   the LLA. The Ninth Circuit has held that "Section 20040.5 applies only to

4   forum selection clauses and only to franchise agreements; it therefore

5   does not apply to 'any contract.'" Bradley v. Harris Research, Inc., 275

6   F.3d 884, 890 (9th Cir. 2001). The threshold issue for determining

7   whether the 12(b)(3) motion should be granted, then, is whether the LLA

8   is a "franchise agreement." The CFRA defines "franchise" as

9        a contract or agreement, either expressed or implied, whether oral

10       or written, between two or more persons by which:

11            (a) A franchisee is granted the right to engage in the

12                business of offering, selling or distributing goods or

13                services under a marketing plan or system prescribed in

14                substantial part by a franchisor; and

15            (b) The operation of the franchisee's business pursuant to

16                that plan or system is substantially associated with the

17                franchisor's trademark, service mark, trade name, logotype,

18                advertising, or other commercial symbol designating the

19                franchisor or its affiliate; and

20            (c) The franchisee is required to pay, directly or indirectly,

21                a franchise fee.

22  Cal. Bus. & Prof. Code § 20001.

23       Plaintiffs entered into the LLA in order to settle prior

24  litigation, in which Defendant alleged that Plaintiffs breached the

25  Franchise Agreements. Plaintiffs specifically agreed to give up their

26  rights under the Franchise Agreements in entering into the LLA. Although

27  the LLA allowed Plaintiffs to continue operating the franchises for a

28  limited period of time, the LLA can best be understood as an agreement

6

1   *terminating* Plaintiffs' rights under the Franchise Agreements, rather

2   than "granting" them rights.

3        In addition, the policy behind the CFRA provision would not be

4   furthered by finding the LLA's forum selection clause unenforceable. The

5   purpose of § 20040.5 is to prevent California franchisees from being

6   *unfairly* forced to litigate in a forum outside of California under a

7   "take it or leave it" franchise agreement. See <u>Basalite Concrete Prod.,</u>

8   <u>LLC v. Keystone Retaining Wall Sys.</u>, 2011 WL 999198, at *4 (E.D. Cal.

9   2011). Here, Plaintiffs were not required to enter into the LLA. They

10  could have asserted their rights under the CFRA when the first lawsuit

11  was filed in January 2013 and sought to have that action transferred to

12  California or dismissed under the public policy exception. Instead,

13  Plaintiffs chose to settle that lawsuit and, in so doing, chose to give

14  up their rights under the Franchise Agreements in exchange for the

15  opportunity to attempt to sell their franchises as going concerns.[3]

16  Therefore, this Court finds that the LLA does not constitute a "franchise

17  agreement" under the CFRA; as a result, the public policy exception to

18  enforcement of the forum selection clause does not apply.

19  **IV. Conclusion**

20       For the reasons stated, the forum selection clause designating the

21  Southern District of Florida as the exclusive forum for this action is

22  enforceable. The Motion is GRANTED under Rule (12)(b)(3). The action is

23  therefore dismissed without prejudice to Plaintiffs refiling the case or

24  _____

25       [3]Plaintiffs argue that they were not represented by an
    attorney at the time the prior lawsuit was filed and that it is
26  therefore unfair to enforce the forum selection clause contained in
    the LLA. Though Plaintiffs certainly would have benefitted from the
27  advice of an attorney in the earlier action, Plaintiffs cannot now
    claim that their business agreement with Defendant is unenforceable
28  as a result of their decision not to retain legal counsel in that
    action.

1   asserting their claims as counterclaims in the pending lawsuit between

2   the parties in the Southern District of Florida.

3

4   IT IS SO ORDERED.

5

6   Dated:   October 25, 2013

7                                    DEAN D. PREGERSON
                                     United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28